IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
ULYSSES WILKERSON and      )
ANGELA WILLIAMS, as Mother )
of Ulysses Wilkerson,      )
                           )
      Plaintiff,           )
                           )       CIVIL ACTION NO.
      v.                   )         2:19cv898-MHT
                           )            (WO)
BRANDON HICKS, in his      )
individual capacity,       )
et al.,                    )
                           )
      Defendants.          )
```

OPINION AND ORDER

Plaintiff Ulysses Wilkerson sustained cuts, bruises, broken bones, and other injuries during an arrest. He and his mother, plaintiff Angela Williams, bring this action against the five police officers involved: defendants Brandon Hicks, Barry Rodgers, Jason Barron, Brandon Kirkland, and Michael Watts.

The complaint, as amended, consists of three counts asserted by Wilkerson and one count asserted by Williams. Each of the four counts names all five

officers as defendants in their individual capacities. Wilkerson contends that the officers subjected him to wrongful arrest and excessive force in violation of the Fourth and Fourteenth Amendments, as enforced through 42 U.S.C. § 1983.  He also brings claims for assault and battery under Alabama law.  Because Wilkerson was a minor at the time of the arrest, Williams separately seeks 'parent's damages' from the officers under Alabama Code § 6-5-390.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), and § 1367 (supplemental).

This cause is before the court on the officers' motion to dismiss and Wilkerson and Williams's motion for expedited discovery.  The officers note that Wilkerson has been adjudicated delinquent in juvenile court for resisting arrest and obstructing justice, which, in their view, precludes him from bringing his § 1983 claims.  They also argue that they are entitled to qualified immunity from the § 1983 claims and

state-agent immunity from Wilkerson's and Williams's state-law claims.  For the reasons set forth below, the court will grant the officers' motion to dismiss in part and deny it in part.  Wilkerson and Williams's motion for expedited discovery will be denied as moot.

## I. MOTION-TO-DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court accepts the plaintiffs' factual allegations as true, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiffs' favor, *see Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  At this stage, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  Generally, to survive a motion

3

to dismiss, a complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but rather "only enough facts to state a claim to relief that is plausible on its face," *id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 556).

## II. FACTUAL BACKGROUND

The facts alleged in the complaint, taken in the light most favorable to Wilkerson and Williams, are as follows.

On December 23, 2017, Wilkerson, then 17 years old,

**4**

was walking alone in downtown Troy, Alabama, shortly
before midnight.  At the time, Hicks, Rodgers, Barron,
Kirkland, and Watts were officers of the Troy Police
Department.  They were patrolling the city by car when,
seeinfg Wilkerson, they exited their vehicles and
approached him.  Wilkerson fled, and a short foot chase
ensued.

Once the officers caught up with Wilkerson, they
placed him under arrest, though they did not tell him
why.  At some point, one or more of the officers began
punching and kicking him all over his head and body.
The assault continued even after the officers had
restrained Wilkerson by pinning his hands to the ground
and placing them in handcuffs.  The beating left
Wilkerson with serious cuts, bruises, broken bones, and
other injuries.

Wilkerson was subsequently charged with obstructing
governmental operations and resisting arrest, and he
was adjudicated delinquent of both offenses in juvenile

court.   At the request of both parties, the court took
judicial notice of an unpublished "memorandum" from the
Alabama   Court   of   Criminal   Appeals   summarizing   the
evidence  presented  in  the  juvenile-court  proceedings.
*See* Order (Doc. 47) at 3-4.

According to the memorandum, the officers testified
in  the  juvenile  court  that  they  were  investigating  a
string  of  vehicle  break-ins  when  they  saw  Wilkerson.
After  Wilkerson  fled,  and  after  the  foot  chase  began,
one  of  the  officers  threatened  to  tase  him  if  he  did
not  stop  running.   Wilkerson  eventually  "stopped  and
began  to  get  down  on  one  knee"  when  an  officer  drew  his
taser.   Defs.' Ex. 1 (Doc. 77-1) at 3-4.   The officer
then  pushed  Wilkerson  to  the  ground,  sat  himself  on
Wilkerson's   lower   back,   and   handcuffed   Wilkerson's
right  hand.   The  officers  testified  that  Wilkerson
started  squirming  to  prevent  them  from  handcuffing  his
left  hand.   Several  officers  piled  on  top  of  him,  and
one  of  them  punched  him  four  or  five  times  in  the  face.

After Wilkerson was adjudicated delinquent of obstructing justice and resisting arrest, he sought review in the Alabama Court of Criminal Appeals. He raised a single argument: that the officers' conduct in approaching him while he was walking at night "was nothing more than an attempt to conduct an illegal *Terry* stop." *Id.* at 6. The appellate court rejected his argument and affirmed the delinquency adjudication.

### III. SECTION 1983 CLAIMS

Wilkerson brings § 1983 claims against each officer for unlawful arrest and excessive force. The officers respond with two arguments: first, that Wilkerson's delinquency adjudication precludes his federal claims; and, second, that the officers are entitled to qualified immunity. The court will determine whether the delinquency adjudication has any preclusive effect before taking up the officers' immunity defense.

7

### a. Preclusion

The officers submit that the doctrine of collateral estoppel precludes Wilkerson from relitigating whether they had grounds to arrest him and whether he resisted their attempts to handcuff him.  Alternatively, they contend that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Wilkerson's § 1983 claims because they rest on factual and legal arguments that are inconsistent with a state-court judgment.  The court concludes that collateral estoppel precludes Wilkerson's wrongful-arrest claims but that neither collateral estoppel nor the *Heck* doctrine bars the excessive-force claims.

### 1. Collateral Estoppel

Under the doctrine of collateral estoppel (otherwise known as issue preclusion), "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the

same issue on a different cause of action between the same parties." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982). "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). In Alabama, application of collateral estoppel to preclude relitigation of an issue requires "(1) [t]hat an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions." *Unum Life Ins. Co. of Am. v. Wright*, 897 So.2d 1059, 1082-83 (Ala. 2004) (quoting *Smith v. Union Bank & Trust Co.*, 653 So.2d 933, 934 (Ala. 1995)). The party raising collateral estoppel bears the burden to prove each element. *See Lee L. Saad Constr. Co. v. DPF*

9

*Architects, P.C.*, 851 So.2d 507, 516 (Ala. 2002).

The officers submit that Wilkerson's delinquency adjudication estops him from bringing wrongful-arrest claims and making any factual representations in service of his excessive-force claims that contradict the juvenile court's findings.  The court agrees that Wilkerson may not raise wrongful-arrest claims because he litigated the alleged wrongfulness of the arrest already in juvenile court.  Additionally, for the purposes of resolving the officers' motion to dismiss the excessive-force claims, the court will assume that Wilkerson is estopped from contending that he did not resist their attempts to handcuff him.

As to the wrongful-arrest claims, the first three elements under Alabama law for collateral estoppel to apply are readily satisfied: the juvenile court was confronted with the same question about the lawfulness of Wilkerson's arrest that he seeks to litigate here, Wilkerson actually litigated that question, and the

juvenile court's resolution of the issue was necessary to its judgment. The juvenile court concluded that Wilkerson resisted arrest in violation of Alabama Code § 13A-10-41, under which an individual may not "intentionally prevent[] or attempt[] to prevent a peace officer from [e]ffecting a *lawful* arrest." Ala. Code § 13A-10-41(a) (emphasis added). Because the lawfulness of an arrest is an element of the offense, the juvenile court necessarily decided that Wilkerson's arrest was lawful in adjudicating him delinquent.

The officers have not submitted any records from the proceedings in juvenile court to corroborate that Wilkerson actually litigated the issue, but that is no barrier for collateral estoppel to apply. Wilkerson's state-court appeal focused exclusively on whether his arrest was lawful; he argued that the arrest violated the Fourth Amendment because it was borne out of "an attempt to conduct an illegal *Terry* stop." Defs.' Ex. 1 (Doc. 77-1) at 6. Wilkerson thus preserved his

11

constitutional challenge and, at the very least, actually litigated it on appeal. Wilkerson's contention in the present lawsuit that the officers lacked arguable probable cause to apprehend him is not materially different from his argument on appeal, which, at its core, likewise centered on whether the officers' conduct violated his Fourth Amendment rights.

The final element under Alabama law for collateral estoppel to apply (the involvement of the same parties) is also satisfied. Although the officers in this case were not parties to Wilkerson's delinquency proceedings, Alabama law treats two litigants as the 'same party' "if the party raising the defense of collateral estoppel ... is in privity with a party to the prior action." *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990). At least in the context of enforcing criminal statutes, Alabama law considers police officers to be privities of the State because of their "identity of interest." *Hunter v. Leeds*, 941

12

F.3d 1265, 1274-75 (11th Cir. 2019). For example, in *Hunter*, the defendants were police officers sued for their conduct during the "same pursuit and apprehension" on which the plaintiff's conviction for menacing was based. *Id.* at 1275. The same is true here, and Wilkerson offers no reason to suggest otherwise.[1] The doctrine of collateral estoppel therefore precludes him from relitigating the lawfulness of his arrest, and so the court will dismiss his wrongful-arrest claims.

Wilkerson's excessive-force claims are another matter. The officers do not invoke collateral estoppel to bar Wilkerson from asserting the excessive-force claims altogether. Instead, they submit that he is estopped from supporting his claims with factual

---

1. The most apparent difference between the present action and *Hunter* is that the officers here seek to give preclusive effect to a juvenile adjudication, whereas *Hunter* involved an adult criminal conviction. Wilkerson, however, does not press that distinction, and so the court need not consider it.

13

contentions that the juvenile court necessarily rejected in adjudicating him delinquent: namely, that he did not resist the officers' attempts to place him in handcuffs.

Collateral estoppel based on a prior state-court proceeding "may limit what facts a § 1983 plaintiff can dispute on [a] defendant's motion ... based on qualified immunity." *M.D. ex rel. Daniels v. Smith*, 504 F. Supp. 2d 1238, 1252 (M.D. Ala. 2007) (Thompson, J.). However, because the officers have submitted only a memorandum issued by the appellate court, "the record contains no relevant findings of fact entered by the juvenile court." *Id.*

The appellate court's summary of the evidence presented in the juvenile court suggests strongly that Wilkerson's delinquency adjudication for resisting arrest was premised on testimony that he tried to prevent the officers from handcuffing him. The court will assume, without deciding, that this is so and that

14

Wilkerson is collaterally estopped from making any contrary factual assertions. As the discussion of qualified immunity below will illustrate, even if the court disregards Wilkerson's contention that he never resisted arrested, his excessive-force claims would still survive the officers' motion to dismiss.

## 2. The *Heck* Doctrine

The defendants next argue that the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), gives Wilkerson's delinquency adjudication preclusive effect. In *Heck*, the Supreme Court held that, "to recover damages for ... actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [invalidated]." 512 U.S. at 486-87 (footnote omitted). In other words, a claim for damages whose success depends on "demonstrat[ing] the invalidity of any outstanding

15

criminal judgment against the plaintiff" is "not cognizable under § 1983." *Id.* at 487.

The officers raise two arguments under *Heck*. First, they contend that *Heck* bars Wilkerson's wrongful-arrest claims because they cannot succeed unless the delinquency adjudication for resisting arrest, which required the juvenile court to find that his arrest was lawful, is invalid. Second, the officers insist that *Heck* prevents the court from hearing any of Wilkerson's § 1983 claims because the complaint contains factual contentions that are incompatible with the juvenile court's findings. Because the court has concluded already that Wilkerson is collaterally estopped from bringing wrongful-arrest claims, it need not consider the first argument at all, and it need only consider the second argument as it pertains to the excessive-force claims.

As a threshold matter, this court has questioned the applicability of *Heck* to juvenile adjudications.

*See M.D.*, 504 F. Supp. 2d at 1252-53.[2]   The Supreme Court in *Heck* spoke of lawsuits that challenged "the validity of an underlying criminal *conviction*," but, in Alabama, "juvenile adjudications and youthful offender determinations are not convictions."   *Id.* (emphasis added).   Alabama law provides that a juvenile adjudication "shall not be considered to be a conviction or impose any civil disabilities ordinarily resulting from a conviction of a crime."   Ala. Code § 12-15-220(a).

Even if the *Heck* doctrine could give delinquency adjudications preclusive effect, it would not bar Wilkerson's excessive-force claims.   The *Heck* opinion drew a sharp distinction between § 1983 claims that

---

2. Since this court issued its opinion in *M.D.*, at least one district court in the Eleventh Circuit has applied *Heck* to juvenile delinquency adjudications, though that court was not interpreting Alabama law. *See Henry v. Mt. Dora*, No. 5:13-cv-528-Oc-30PRL, 2014 WL 5823229, at *4-5 (M.D. Fla. Nov. 10, 2014) (Moody, J.), *aff'd*, 688 F. App'x 842 (11th Cir. 2017) (mem.).

"would *necessarily* imply the invalidity of [a] conviction or sentence," in which case the state-court judgment would preclude a suit for damages, and those that would not.  512 U.S. at 487 (emphasis added). Emphasizing the importance of this "logical necessity" to *Heck*'s holding, the Eleventh Circuit Court of Appeals has held that "the use of excessive force may not necessarily make [a plaintiff's] arrest unlawful" and cited favorably to out-of-circuit decisions reaching the same result. *Dyer v. Lee*, 488 F.3d 876, 879-81 (11th Cir. 2007).

The officers argue that *Heck* bars Wilkerson's excessive-force claims nonetheless pursuant to the 'inconsistent-factual-allegations rule,' under which *Heck* may preclude a § 1983 action if the complaint "makes specific factual allegations that are inconsistent with the facts upon which [the plaintiff's] criminal convictions were based." *Id.* at 883 n.9.  The officers submit that Wilkerson

18

"voluntarily steer[ed] the [c]omplaint into *Heck* territory" by "predicat[ing] [the] use-of-force claims on the factual assertion that [he] did not resist arrest at all," which is inconsistent with his delinquency adjudication.  Br. in Support (Doc. 77) at 28.

"To the extent [the Eleventh Circuit] adopted the inconsistent-factual-allegation [rule]," it has emphasized that the rule applies only in a "narrow category of cases," namely, "where the allegation in the § 1983 complaint is a specific one that both necessarily implies the earlier decision is invalid *and* is necessary to the success of the § 1983 suit itself." *Dixon v. Hodges*, 887 F.3d 1235, 1239 (11th Cir. 2018) (per curiam) (emphasis in original).  "When a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, but that fact is not necessary to the success of his § 1983 suit, the *Heck* bar does not apply."  *Id.* at 1239.

19

In *Dixon*, the Eleventh Circuit reversed an application of *Heck* to bar a prisoner's excessive-force claim where the complaint alleged that the plaintiff did not lunge at the defendant prior to the use of force, contrary to the plaintiff's disciplinary punishment. *See id.* at 1238-40. Because it was "logically possible both that [the plaintiff] lunged at [the defendant] and that [the defendant] used excessive force," *Heck* did not control. *Id.* at 1240. Similarly, in *Harrigan v. Metro Dade Police Department Station #4*, 977 F.3d 1185 (11th Cir. 2020), the Eleventh Circuit reversed an application of *Heck* to bar an excessive-force claim where the complaint alleged that the defendant shot the plaintiff unprovoked and that the plaintiff swerved his car only to protect his life, despite the plaintiff's convictions for aggravated assault on a law-enforcement officer and fleeing to elude. *See* 977 F.3d at 1193-94, 1197. And, in *Cendan v. Trujillo*, 779 F. App'x 688 (11th Cir. 2019) (per

curiam), *Heck* did not bar an excessive-force claim where the complaint denied that the plaintiff had ever resisted arrest, despite his convictions for resisting arrest with violence and other offenses.  It was enough that the plaintiff "could prevail under § 1983 by proving that [the defendants] used gratuitous force against him after he had stopped resisting and been subdued."  779 F. App'x at 690.

As in these cases, Wilkerson's complaint contains factual contentions that are inconsistent with the delinquency adjudication, but the truth of those contentions is not necessary to the success of his lawsuit.  The excessive-force claims can prevail if Wilkerson can show that the officers continued to beat him after he stopped resisting or if the amount of force deployed was grossly unnecessary to subdue him. *Heck* therefore does not preclude Wilkerson's § 1983 claims for excessive force.

b. Qualified Immunity

Having determined that Wilkerson's § 1983 claim against each officer for unlawful arrest must be dismissed, the court turns to whether the officers are entitled to qualified immunity from Wilkerson's remaining § 1983 claims for excessive force.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

"An officer asserting a qualified-immunity defense

22

bears the initial burden of showing that he was acting within his discretionary authority." *Patel v. Lanier Cty.*, 969 F.3d 1173, 1181 (11th Cir. 2020) (internal quotation marks omitted) (quoting *Piazza v. Jefferson Cty.*, 923 F.3d 947, 951 (11th Cir. 2019)). Here, the parties agree that all officers were acting within their discretionary authority at the time of the arrest. Therefore, the burden shifts to Wilkerson to show "(1) the defendants violated his federal constitutional or statutory rights" and "(2) those rights were clearly established at the time they acted." *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008).

## 1. Constitutional Violation

Where, as here, "a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650,

656 (2014) (per curiam).  Accordingly, "whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard."  *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam)).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The factors that inform this reasonableness inquiry include "(1) the severity of the crime; (2) whether the individual 'poses an immediate threat to the safety of the officers or others;' (3) whether the individual actively resists or tries to evade arrest by flight; (4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury."  *Hinson v. Bias*, 927 F.3d 1103, 1117 (11th Cir. 2019) (internal citations

omitted) (quoting *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (per curiam)).

"[E]ach defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). But the Eleventh Circuit has rejected the argument "that the force administered by each defendant in [a] collective beating must be analyzed separately to determine which of the defendants' blows, if any, used excessive force." *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *see also Velazquez v. Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) (per curiam) (rejecting the argument that summary judgment for the defendants was appropriate where the plaintiff could not identify which of several officers allegedly beat him). At this stage of the proceedings, the court accepts as true the complaint's allegations that each

of the officers participated in the arrest and that one or more of them punched and kicked Wilkerson.  While additional development of the facts may later warrant a defendant-by-defendant analysis, such disaggregation is neither required nor realistic at this time.

Wilkerson represents that the officers found him walking alone late at night, chased him for several blocks, and arrested him.  In his telling, after the arrest, the officers threw him to the ground and began physically assaulting him, and the blows continued even after his "hands were handcuffed and/or pinned to the ground."  Compl. (Doc. 48) ¶ 26.  Wilkerson also submits that he put up no resistance during the arrest, but, as stated, the court will disregard that contention.[3]  However, Wilkerson may still argue that

---

3. The court will also disregard all allegations in the complaint suggesting that, on the evening of his arrest, Wilkerson "neither said anything, nor had done anything, to be considered harmful or a threat to any of the Defendants or to others."  Compl. (Doc. 48) (continued...)

the officers continued beating him even after he
stopped resisting.[4]

These factual allegations are sufficient to state a
claim that the officers deployed excessive force
against him.   Because Wilkerson alleges that the

_____

¶ 22; *see also id.* ¶ 18; *id.* ¶ 25.   Wilkerson's
representations that he did not appear threatening are
not entitled to a presumption of truth because they are
conclusory.   Nor will the court consider the
declarations of Wilkerson and Williams's counsel; to
the extent the declarations do more than note
uncontroverted facts and repeat legal arguments made in
the filings, they appear to be conclusory and lack a
foundation in personal knowledge.

4. The officers insist that the complaint's
allegations about Wilkerson being punched and kicked
are "conclusory as a matter of law."   Br. in Support
(Doc. 77) at 53.   They point to an unreported Eleventh
Circuit opinion describing as conclusory the
plaintiff's sworn statement that he had been "stomped
and kicked numerous times."   *Teal v. Campbell*, 603 Fed.
App'x 820, 823 (11th Cir. 2015) (per curiam).
Unreported decisions are not binding on this court.
Moreover, *Teal* involved a motion for summary judgment,
and the Eleventh Circuit decided not to credit the
plaintiff's allegation because it lacked any additional
supporting evidence in the record.   *Teal* does not
purport to address what allegations are entitled to a
presumption of truth at the motion-to-dismiss stage,
when discovery has yet to begin.

27

officers continued assaulting him even after arresting him and placing handcuffs on both his hands, when any resistance on his part would have been futile, almost all the factors that help courts determine whether a use of force was reasonable militate in favor of finding a constitutional violation.  Wilkerson could not have presented an "immediate threat" to the officers' safety if both of his hands were in handcuffs; the complaint contains no indication that he was actively resisting the officers' directions by that point; the "need for force" was minimal after the officers had restrained him completely; "the amount of force applied" from the punches and kicks was disproportionate "in light of the nature of the need"; and the injuries were "sever[e]," leaving Wilkerson bloodied and his bones broken. *Hinson*, 927 F.3d at 1117.  The officers, in seeing Wilkerson walking alone in an area where they believed vehicle break-ins were afoot, may have had reason to suspect him of a crime,

but that alone cannot justify the alleged amount of force deployed once he was already arrested and completely restrained. Under these circumstances, the officers were "not entitled to use any force at that time," and their repeated strikes were "gratuitous." *Hadley*, 526 F.3d at 1330.

The officers do not dispute any of this. Instead, they contend that the court should disregard the complaint's allegation that the assault continued even after the officers had handcuffed and restrained Wilkerson. Although they acknowledge that the court must take the allegations in the complaint as true, they ask the court to consider footage from two of the arresting officers' body-worn cameras to "override the [c]omplaint's conclusory allegations." Br. in Support (Doc. 77) at 14. They argue that the court may consider the footage without converting their motion to dismiss into a motion for summary judgment.

"A court may consider an exhibit attached to a

pleading, or a motion to dismiss, without converting the motion into one for summary judgment, where the exhibit is central to the plaintiff's claim, and its authenticity is unchallenged." *Cantrell v. McClure*, 805 F. App'x 817, 819 n.2 (11th Cir. 2020) (per curiam). In at least two unreported decisions, the Eleventh Circuit has invoked this rule to permit consideration of video evidence attached to a motion to dismiss. *See id.* at 819; *McDowell v. Gonzalez*, 820 F. App'x 989, 992 (11th Cir. 2020) (per curiam).

Notably, however, none of the authorities cited by the officers holds that the court *must* accept their video evidence at the motion-to-dismiss stage. On the contrary, "federal courts have *complete discretion* to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion ... or simply not consider it." 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed. (June 2024)) (emphasis added).

30

Good reasons counsel against consideration of the video evidence at this time.  The officers state that they have "attached two body-worn camera recordings to their motion to dismiss."  Br. in Support (Doc. 77) at 13.  But neither party disputes that there were more than two officers at the scene, which means that there may be additional footage with relevance to the present action.  Without affording Wilkerson and Williams the benefit of discovery, the court cannot discount the possibility that the officers selected specific footage that would put their conduct in the most favorable light.  The court will therefore defer consideration of the video evidence until summary judgment.

In sum, the complaint's contention that the officers physically assaulted Wilkerson after he was on the ground with both of his hands handcuffed states a claim for excessive force.  The officers' submission of video evidence does not compel a different result.  The court will turn now to whether the right to be free

from such force was clearly established at the time of Wilkerson's arrest.

## 2. Clearly Established Law

There are three ways for a plaintiff in the Eleventh Circuit to show that a right was clearly established.  First, "the plaintiff can point to a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court." *J W ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018) (per curiam).  The case "need not be directly on point," but it must "have placed the statutory or constitutional question beyond debate." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)).  "Second, the plaintiff can identify a broader, clearly established principle that should govern the novel facts of the situation." *J W*, 904 F.3d at 1259.  Or, third, the plaintiff can

demonstrate that the alleged conduct "so obviously violated the Constitution that prior case law is unnecessary." *Id.* at 1260.

Long before Wilkerson's arrest, the Eleventh Circuit had clearly established "that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). Crucially, this is true even if someone resists arrest at first; the Fourth Amendment still forbids an officer from beating an initially non-compliant suspect after the individual is handcuffed and no longer resisting. For example, in *Hadley*, the Eleventh Circuit denied summary judgment to a police officer who had "punched [the plaintiff] in the stomach while he was handcuffed and not struggling or resisting." *Id.* It did not matter that the plaintiff "resisted [arrest] at some point during the night." *Id.* at 1331. The critical point was that the punch occurred when the plaintiff was not resisting

33

arrest.

Similarly, in *Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009), correctional officers deployed an electronic shield after an inmate refused to submit to handcuffing. After the shock allegedly "incapacitated" the plaintiff, the officers kicked, punched, and beat him. 280 F.3d at 1302. Based on this beating, the Eleventh Circuit affirmed the denial of summary judgment to the officers, as it was "clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued." *Id.* at 1303.

Even before these cases were decided, in *Smith v. Maddox*, 127 F.3d 1416 (11th Cir. 1997) (per curiam), the Eleventh Circuit affirmed the denial of summary judgment to an officer who broke the plaintiff's arm during an arrest. The plaintiff had "raised [a] baseball bat in a threatening posture" when first

approached by the officer.  127 F.3d at 1418.  After
the officer drew his gun, the plaintiff dropped the bat
and ran away.  Ultimately, the plaintiff submitted to
the arrest and got on the ground.  The officer broke
the plaintiff's arm "with a grunt and a blow" when he
was on top of the plaintiff and in the process of
handcuffing him.  *Id.*  The Eleventh Circuit concluded
that the use of force "was obviously unnecessary to
restrain even a previously fractious arrestee."  *Id.* at
1420.

Against this backdrop, the officers here cannot
contend that the then-existing precedent left any doubt
about the legality of using bone-breaking force against
an initially non-compliant suspect who has been
restrained and handcuffed.  Nor do they.  The officers
instead point to cases in the Eleventh Circuit
emphasizing the leeway that law enforcement has to
deploy force against suspects *before* they are fully
restrained.  *See* Br. in Support (Doc. 77) at 50-52; *id.*

35

at 65 (seeking to highlight the "similarity" of cases like *Hinson*, 927 F.3d 1103, 1120-21, and *Mobley v. Palm Beach County Sheriff Department*, 783 F.3d 1347, 1356 (11th Cir. 2015) (per curiam)).  They insist that these cases are fatal to Wilkerson's excessive-force claims if the court considers the body-camera footage and disregards Wilkerson's contention that the beating continued after he was handcuffed.  But, as stated, the court has not accepted the video evidence and must take Wilkerson's allegation about the beating's timing as true.  Reading the complaint in that light, the court will deny the officers' motion to dismiss the excessive-force claims on qualified-immunity grounds.


## IV. STATE-LAW CLAIMS

Finally, the court turns to the two counts of the complaint asserted under Alabama law:  Wilkerson's claims for assault and battery and Williams's claims for parent's damages under Alabama Code § 6-5-390.

36

Because the court concludes that the complaint plausibly states § 1983 claims for excessive force, the court rejects the officers' argument that the complaint "depicts reasonable force" that could not have constituted assault and battery. Br. in Support (Doc. 77) at 63-64.

Apart from that argument, the officers invoke state-agent immunity from Wilkerson's claims for assault and battery. Alabama law affords "[e]very peace officer ... immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338(a). The Alabama Supreme Court has explained that this immunity protects a state agent from liability for "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." *Ex parte Cranman*, 792

37

So.2d 392, 405 (Ala. 2000) (plurality opinion).
However, a state agent shall not be immune "when the
Constitution or laws of the United States ... require
otherwise" or "when the State agent acts willfully,
maliciously, fraudulently, in bad faith, beyond his or
her authority, or under a mistaken interpretation of
the law." *Id.; see also Downing v. Dothan*, 59 So.3d
16, 19 (Ala. 2010) (noting that *Cranman* articulated the
standard governing claims of state-agent immunity).

Wilkerson does not contest that the officers were,
at all relevant times, peace officers acting within the
scope of their responsibilities. However, he points to
the paragraphs in the complaint stating that the
officers acted willfully and in bad faith. While the
mere allegation of bad-faith conduct cannot prevent
dismissal, the court is satisfied that the complaint's
factual submissions, read in the light most favorable
to Wilkerson, are sufficient to overcome the officers'
immunity arguments. The Eleventh Circuit has observed

repeatedly that "[t]he Alabama Supreme Court has largely equated qualified immunity with [state-agent] immunity." *Hunter*, 941 F.3d at 1284; *see also Sheth v. Webster*, 145 F.3d 1231, 1240 (11th Cir. 1998) (per curiam).[5] For largely the same reasons that the court will not dismiss Wilkerson's § 1983 claims for excessive force, the court finds that dismissal of his claims for assault and battery is inappropriate at this time.

Additionally, because the officers' only argument to dismiss Williams's claims for parent's damages is that they are derivative of Wilkerson's assault-and-battery claims, Williams's claims will also survive.

_____

5. The Eleventh Circuit in *Hunter* referred to 'discretionary-function immunity,' not state-agent immunity, but the two terms refer to the same immunity defense. *See* 1 Ala. Pers. Inj. & Torts § 3:26 (2023 ed.) ("What was for many years referred to in the decisions, state and federal, as discretionary function immunity is now called state-agent immunity in the Alabama appellate courts.").

39

## V. CONCLUSION

For the foregoing reasons, the court will grant the officers' motion to dismiss Wilkerson's § 1983 claims for unlawful arrest but will deny the motion with respect to the remaining claims.  The court emphasizes that it has relied on only allegations in the amended complaint.  Whether the evidence actually supports those allegations is not before the court at this time.

Also, because the case will proceed to discovery on those claims, the court will deny Wilkerson and Williams's motion for expedited discovery as moot.

\* \* \*

Accordingly, it is ORDERED that:

(1) Defendants Brandon Hicks, Barry Rodgers, Jason Barron, Brandon Kirkland, and Michael Watts's motion to dismiss (Doc. 76) is granted as to plaintiff Ulysses Wilkerson's § 1983 claims for unlawful arrest.

40

   (2)  Defendants  Hicks,  Rodgers,  Barron,  Kirkland,
and  Watts's  motion  to  dismiss  (Doc. 76)  is  denied  with
respect  to  plaintiff  Wilkerson's  § 1983  claims  for
unlawful use of force,  plaintiff Wilkerson's claims for
assault  and  battery,  and  plaintiff  Angela  Williams's
claims  for  parent's  damages  under  Alabama  Code
§ 6-5-390.

   (3) Plaintiffs Wilkerson and Williams's motions for
permission  to  conduct  expedited  and  limited  discovery
(Doc. 71 and Doc. 87)  are  denied  as  moot.

   DONE, this the 28th day of August, 2024.

                    /s/ Myron H. Thompson
                  UNITED STATES DISTRICT JUDGE